UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| Anita M. Kempf, | Case No. 18-cv-1367 (WMW/LIB) |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Hennepin County, | |
| Defendant. | |

---

This matter is before the Court on Defendant Hennepin County's motion for summary judgment. (Dkt. 16.) For the reasons addressed below, the Court grants summary judgment for Hennepin County on all of the remaining counts of Plaintiff Anita M. Kempf's complaint.

## BACKGROUND

Kempf was an architect at Hennepin County from 1997 to 2016. During her employment at Hennepin County, Kempf's performance reviews indicated that she met or exceeded expectations in nearly all aspects of her work. Kempf was a Senior Project Architect in 2016.

On March 9, 2016, Jay Biedny, Kempf's Division Manager, went to Kempf's office to discuss a project referred to as the Seward Office Renovation. According to Kempf, Biedny was speaking "in a loud and hostile voice" from the beginning. At her deposition, Kempf describes the incident as follows:

> I was looking at my calendar back in the corner. He was right up to the back of my chair, and I didn't know that at the time, he said, "stop,

> stop emailing," in a very loud voice. I turned my head, his crotch was in my face, I looked up and I screamed in terror.
>
> [. . .]
>
> His approach and his continued entry into my work space and his being—trapping me back in the corner and towering over me and yelling at me was very frightening . . . . He was totally up against the back of my chair, his crotch was within six inches of my face . . . . [I]t felt like an assault was imminent.

Kempf asked Biedny to leave multiple times and had to shut her door to compose herself.

According to Biedny, he had sent Kempt an email the day before, asking her about the necessary preparation for the Seward Office Renovation project to commence the following week. Biedny requested Kempf to respond that afternoon. Because he had received no reply from Kempf, Biedny went to her office the following day to discuss the issue raised in his email. Biedny's written report of the incident includes the following account:

> I stated that "Jerome [her supervisor] had received calls from the site users and that those users were concerned. They wanted to know if the project was going to proceed or not." At this she said that "if they want to know, then I will cancel by email right now." I told her "canceling the project today would not resolve the impasse she has . . . ." At this, her voice changed from shouts to screams.
>
> [. . .]
>
> I then tried to calm her down by stating that her screaming was not helpful. At that point a rage came over her and she order me to stop talking and to leave her office. . . . Then I said "I am sorry that we could not address this important issue in a civil tone." At that she jumped out of her chair and move[d] toward me yelling "stop talking and get out of my office" waving her hands in my face. At that time, I backed away from her and into the doorway. She then took the door in hand and slammed it shut[,] forcing me into the hallway.

(First alteration in original.)

Other employees working nearby reported that they heard Kempf scream, not Biedny. Barbara O'Brien, Deputy Director of Facility Services, who also was on the floor, heard Kempf screaming and heard her slam the door.

Both Biedny and Kempf reported the incident to O'Brien that same day.[1] O'Brien immediately contacted Eric Slette, the department's Human Resources Business Partner, and launched a formal investigation. Jerome Ryan, Kempf's supervisor, who reported directly to Biedny, led the investigation. Biedny submitted a written statement, and Ryan interviewed Kempf. The evidence suggests that Biedny received updates about the investigation, which Kempf did not receive.

Following the investigation, Hennepin County concluded that Kempf committed misconduct on March 9, 2016, and issued her a five-day unpaid suspension. The Five Day Suspension notice, dated March 17, 2016, stated that Kempf's conduct on March 9, 2016, violated Hennepin County Human Resources Rule 16.3g, which provides that: "No employee shall conduct himself/herself in any manner which shall reflect negatively on the County." The notice also cited as justifications for the suspension Kempf's performance deficiencies, her poking O'Brien on March 9, 2016, and an oral reprimand that Kempf received in 2014.

Kempf, who did not appeal the suspension within the prescribed five working days, served the suspension between March 28, 2016, and April 1, 2016.

---

[1] The parties dispute the nature and tone of the conversation between Kempf and O'Brien. Hennepin County maintains that Kempf, who was agitated, was poking at O'Brien in the shoulder and upper chest area. Kempf contends that the poke was "jovial."

3

On April 5, 2016, Kempf met with Michael Sable, Director of Facility Services, to discuss her "concerns about behaviors of management in [her] division." In his follow-up email, Sable advised Kempf that she had three options: informal complaint, formal complaint, or external complaint.

Kempf filed an informal complaint in the form of a letter addressed to Sable and O'Brien. The letter, dated April 11, 2016, was titled "Five Day Suspension, Dated March 17, 2016." Kempf's letter challenged certain factual descriptions included in the March 17, 2016 suspension notice and the manner in which the investigation of the March 9, 2016 incident was conducted. She believed the issues discussed in the letter were issues that had caused "[m]any women [to] leave their place of work." Sable and O'Brien responded in an April 13, 2016 letter and advised Kempf that, after reviewing the series of events associated with her five-day suspension, they decided to uphold the suspension.

Kempf subsequently missed the annual April 15 deadline to submit estimates for capital improvement projects. The estimates that she submitted were untimely, incomplete, and in need of additional work that her co-workers ultimately performed.

On April 5, 2016, Kempf used her ID badge to enter the office suite of Chester Cooper, Director of the Department of Community Corrections and Rehabilitation (DOCCR). Because the DOCCR was one of Kempf's clients, her ID badge allowed her to access DOCCR's offices. But Hennepin County deemed such access to be without express permission.

On April 11, 2016, Kempf approached Cooper on the skyway level of the Hennepin County Government Center. Observers reported that, during this interaction, Kempf spoke

in a loud, upset tone and displayed aggressive body language. Kempf attended a meeting at the Family Justice Center on April 20, 2016, after which an attendee reported that Kempf's behavior was "abrasive, disrespectful, and unprofessional."

Hennepin County placed Kempf on paid administrative leave on April 26, 2016, and issued Kempf a Notice of Intent to Dismiss on May 3, 2016. The notice cited deficiencies in Kempf's job performance and escalating misconduct, including her conduct on April 5, 2016, April 11, 2016, and April 20, 2016, described above. Kempf elected to voluntarily resign in lieu of being terminated.

On May 17, 2018, Kempf filed the instant complaint against Hennepin County.[2] The complaint includes seven counts, alleging sex discrimination, age discrimination, hostile work environment, and unlawful retaliation, in violation of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), the Age Discrimination in Employment Act, 29 U.S.C. § 623(a), (d), the Minnesota Whistleblower Act, Minn. Stat. § 181.932, and the Minnesota Public Employment Labor Relations Act, Minn. Stat. ch. 179A. After Hennepin County moved for summary judgment on all counts, Kempf voluntarily dismissed four of them. The remaining counts include one claim of sex discrimination under Title VII, 42 U.S.C.

---

[2]  Title VII "establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). "To exhaust administrative remedies an individual must (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." *Id.* (citing 42 U.S.C. § 2000e-5(b), (c), (e)). Kempf has satisfied Title VII's exhaustion requirements, having filed a timely charge of discrimination with the EEOC on January 5, 2017, and received a notice of the right to sue on February 20, 2018. Kempf commenced this lawsuit within 90 days of the notice of the right to sue.

5

§ 2000e-2(a), (Count One), and two claims of unlawful retaliation under Title VII, 42 U.S.C. § 2000e-3(a), and the Minnesota Whistleblower Act, Minn. Stat. § 181.932, (Counts Three and Six, respectively).

## ANALYSIS

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When ruling on a motion for summary judgment, courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, a nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" supporting that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see* Fed. R. Civ. P. 56(c)(1)(A). A claim that is the subject of a motion for summary judgment cannot "get to a jury without any significant probative evidence tending to support the [claim]." *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1091 (8th Cir. 1992) (quoting *Anderson*, 477 U.S. at 249).

Under Title VII, an employer may not discriminate against an employee with respect to the terms and conditions of employment because of the employee's sex. *See* 42 U.S.C. § 2000e-2(a)(1); *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 825 (8th Cir. 2017). In addition,

both Title VII and the Minnesota Whistleblower Act prohibit an employer from retaliating against an employee for participating in statutorily protected conduct. *See* 42 U.S.C. § 2000e-3(a); Minn. Stat. § 181.932, subdiv. 1(1); *Green v. Franklin Nat'l Bank*, 459 F.3d 903, 913–14 (8th Cir. 2006). A claim of sex discrimination or unlawful retaliation may be established through direct or indirect evidence. *See Blake*, 870 F.3d at 825–26; *Green*, 459 F.3d at 913–14. Direct evidence demonstrates "a specific link" between a materially adverse action and the protected conduct or alleged discriminatory animus that is "sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013) (internal quotation marks omitted).

When direct evidence of discrimination does not exist, the *McDonnell Douglas* burden-shifting framework for indirect evidence applies. *See Grant v. City of Blytheville*, 841 F.3d 767, 773 (8th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). First, the plaintiff has the burden of making a *prima facie* case of discrimination or retaliation. *Id.* If she makes a *prima facie* case, the employer then has the burden of articulating a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action. *Id.* If the employer meets this requirement, the burden returns to the plaintiff, who must produce evidence that the employer's reason is a pretext for discrimination or retaliation. *Id.* Although the *burden of production* may shift in the *McDonnell Douglas* analysis, the "ultimate burden of persuasion" remains with the plaintiff "at all times." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12 (1993) (internal quotation marks omitted).

7

In light of the applicable legal standards, the Court addresses in turn each remaining count of Kempf's complaint.

## I. Unlawful Retaliation Under Title VII and the Minnesota Whistleblower Act (Counts Three and Six)

To establish a *prima facie* case of unlawful retaliation under Title VII or the Minnesota Whistleblower Act,[3] a plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two events. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019).

Hennepin County contends that Kempf cannot satisfy the first and third elements of her retaliation claims. More specifically, Hennepin County argues, Kempf did not engage in any statutorily protected activity and, alternatively, there was no causal connection between her statutorily protected activity, if any, and the adverse employment action that she suffered. Kempf counters that she has established a *prima facie* case of unlawful retaliation for the adverse employment action she suffered, which is her involuntary resignation or termination in May 2016.[4] Kempf maintains that she engaged in certain

---

[3] The analyses for retaliation claims under Title VII and the Minnesota Whistleblower Act are similar in many respects, and the same burden-shifting framework applies to both claims. *See, e.g., Green*, 459 F.3d at 914 n.8; *Calvit v. Minneapolis Pub. Sch.*, 122 F.3d 1112, 1118 (8th Cir. 1997).

[4] In her opposition brief, Kempf maintains that her five-day suspension in March 2016 was another adverse employment action that gives rise to a separate claim of unlawful retaliation. But it does not appear that Kempf exhausted this claim by presenting it in her charge to the EEOC. Moreover, the record does not demonstrate that Kempf made any statutorily protected report relevant to her five-day suspension. For these reasons, the

8

protected conduct and that the evidence of pretext she presents also is sufficient to establish the causal-connection element of her retaliation claims.[5]

As Kempf's *prima facie* case relies on her evidence of pretext, the Court first addresses Hennepin County's proffered nonretaliatory reasons and Kempf's corresponding arguments as to whether those reasons are pretextual.

A.   **Hennepin County's Proffered Nonretaliatory Reasons**

Assuming Kempf makes a *prima facie* case of unlawful retaliation, Hennepin County has the burden of articulating a legitimate, nonretaliatory reason for its decision to terminate Kempf's employment on May 3, 2016.

Hennepin County asserts that the reasons for Kempf's termination were deficiencies in her job performance and escalating misconduct as cited in Hennepin County's May 3, 2016 Notice of Intent to Dismiss. The deficiencies and misconduct include: (1) failure to meet job expectations in April 2016; (2) unauthorized access to a client's office suite on April 5, 2016; (3) aggressive behavior toward a client on April 11, 2016; and (4) "abrasive, disrespectful, and unprofessional" conduct at a client meeting on April 20, 2016.

---

Court declines to consider an unlawful-retaliation claim based on Kempf's five-day suspension. *See Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 827 (8th Cir. 2009).

[5]   Kempf contends that Hennepin County's reference, in the May 3, 2016 Notice of Intent to Dismiss, to Kempf's prior suspension for misconduct on March 9, 2016, is direct evidence of retaliation because the March 9, 2016 incident was Kempf's statutorily protected conduct. But, because the notice also references several other instances unrelated to any protected activity, Kempf's direct-evidence argument fails as a matter of law. *See Blomker v. Jewell*, 831 F.3d 1051, 1059–60 (8th Cir. 2016).

Kempf does not dispute that Hennepin County has introduced legitimate, nonretaliatory reasons for her termination. Instead, Kempf challenges these reasons as pretextual. Accordingly, Hennepin County has satisfied its burden of articulating a legitimate, nonretaliatory reason for the adverse employment action.

B. **Kempf's Pretext Arguments**

In light of the legitimate, nonretaliatory reasons advanced by Hennepin County, the burden shifts back to Kempf to produce evidence that those reasons are pretextual.

In order to satisfy this burden, a plaintiff must both (1) discredit the defendant's proffered reasons for the adverse employment action and (2) show that the circumstances permit drawing a reasonable inference that the real reason for the action was retaliation. *Hutton v. Maynard*, 812 F.3d 679, 684 (8th Cir. 2016). Such circumstances may include instances when the employer "(1) failed to follow its own policies, (2) treated similarly[ ]situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015). Here, Kempf must produce evidence that Hennepin County's "proffered retaliatory explanation for adverse employment action is a pretext for *unlawful retaliation*, not that it is merely false in some way." *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015) (internal quotation marks and brackets omitted). The Court views such evidence of pretext and retaliation in light of the employer's nonretaliatory reasons. *Id.*

Kempf makes five arguments to rebut Hennepin County's reasons for Kempf's termination. Her arguments are based on the following: (1) the timing of Kempf's April 11, 2016 letter and the April 26, 2016 paid administrative leave that Hennepin County

imposed on her; (2) the lack of evidence to support Hennepin County's assertion that Kempf's unauthorized access of Cooper's office suite caused concerns and fear among several employees; (3) the different treatment afforded to male employees who also suffered from performance deficiencies; (4) Kempf's historically strong work performance; and (5) Hennepin County's failure to follow its policy allegedly requiring investigation of Kempf's April 11, 2016 complaint. But these arguments do not address two of Hennepin County's reasons for Kempf's termination—namely, aggressive behavior toward a client on April 11, 2016, and "abrasive, disrespectful, and unprofessional" conduct at a client meeting on April 20, 2016. Hennepin County explained in its May 3, 2016 Notice of Intent to Dismiss, and continues to maintain on summary judgment, that these incidents constitute misconduct—namely, violations of Hennepin County Human Resources Rule 16.3g—that justifies dismissal.

An employee who engages in statutorily protected activity is not insulated from adverse employment actions that may result from misconduct or violations of workplace rules. *Richey v. City of Independence*, 540 F.3d 779, 784 (8th Cir. 2008). And an employer's good-faith belief that the employee committed misconduct is a legitimate, nonretaliatory reason for an adverse employment action. *Id.*

Here, there is substantial evidence in the record supporting the misconduct alleged to have occurred on April 11, 2016, and April 20, 2016. Kempf has not presented any contradictory evidence to contest these allegations. Her attempt to undermine Hennepin County's decision by challenging certain aspects of the record is not only unpersuasive as

a matter of fact,[6] but also insufficient as matter of law. *See Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018) (requiring *evidence* that "do[es] more than raise doubts about the wisdom and fairness of the employer's opinions and actions—it must create a real issue as to the genuineness of the employer's perceptions and beliefs").

In short, substantial evidence in the record supports Hennepin County's proffered legitimate, nonretaliatory reasons. Hennepin County has identified specific facts that support its finding that Kempf violated a specific workplace rule. Hennepin County has not changed its explanation for Kempf's termination. And Kempf identifies no similarly situated employee who committed the same misconduct and was treated in a disparate manner by Hennepin County. Accordingly, Kempf fails to create a genuine issue of material fact as to pretext. *See United States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*, 915 F.3d 1158, 1170 (8th Cir. 2019). Summary judgment for Hennepin County is proper as to Counts Three and Six of Kempf's complaint. *See Blomker*, 831 F.3d at 1059–60 (affirming dismissal of retaliation claim because there were other reasons "unrelated to *any* protected activity"); *Mervine v. Plant Eng'g Servs., LLC*, 859 F.3d 519, 528 (8th Cir. 2017) (employer's honest belief that an employee engaged in misconduct is sufficient to support granting summary judgment).

---

[6] Contrary to Kempf's assertion that "no one could testify as to the identity of the supposed multiple witnesses [to the April 11, 2016 incident]," the record reflects that both O'Brien and Sable testified as to that issue. Sable even identified a witness by name.

## II. Sex Discrimination Under Title VII (Count One)

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show that (1) she was a member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011).

Assuming that Kempf establishes a *prima facie* case of sex discrimination, the *McDonnell Douglas* framework for indirect evidence applies[7] and requires Hennepin County to articulate a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Grant*, 841 F.3d at 773. Then it is Kempf's burden to produce evidence that Hennepin County's reason is a pretext for discrimination.

For her Title VII sex-discrimination claim, Kempf incorporates the same arguments and evidence of pretext that she presents in support of her unlawful-retaliation claims. And Kempf's sex-discrimination claim fails for the same reasons discussed above. An employer's "belief that the employee committed misconduct is a legitimate, non-discriminatory reason for adverse action." *Richey*, 540 F.3d at 784. Therefore, the Court grants summary judgment in favor of Hennepin County on Count One of Kempf's complaint. *See Blomker*, 831 F.3d at 1059–60; *Mervine*, 859 F.3d at 528.

---

[7] Kempf does not claim to have any direct evidence of sex discrimination.

**ORDER**

Based on the foregoing analysis and all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant Hennepin County's motion for summary judgment, (Dkt. 16), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 14, 2020
s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge